**FILED**

**NOV 18 2020**

**THOMAS G. BRUTON**
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **20 CR 813** |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Section 1001; Title 26, United |
| ANTHONY SABAINI | ) | States Code, Section 7206; and Title 31, |
| | ) | United States Code, Section 5324 |

**JUDGE WOOD**

**MAGISTRATE JUDGE CUMMINGS**

### COUNT ONE

The SPECIAL JANUARY 2019 GRAND JURY charges:

1.    At times material to this indictment:

a.    Homeland Security Investigations ("HSI") was a criminal investigative unit within the Department of Homeland Security ("DHS"), an agency within the executive branch of the Government of the United States.

b.    Defendant ANTHONY SABAINI was employed by HSI as a special agent assigned to its Oakbrook Terrace, Illinois field office. SABAINI's responsibilities as a special agent included investigating narcotics and money laundering offenses, as well as handling confidential sources. As an HSI special agent, SABAINI received training on various aspects of money laundering, including the practice of structuring financial transactions to avoid the federal currency reporting laws. SABAINI served as a lead instructor for an HSI training course on money laundering and financial investigations.

c.    SABAINI received his salary from HSI through direct deposit made to a joint bank account at USAA Bank in the name of SABAINI and his spouse.

d.      On or about April 18, 2014, SABAINI opened a bank account at Fifth Third Bank in his name only, for which he was the sole signatory ("SABAINI Account 2").

e.      From in or around April, 2014 until in or around November, 2018, SABAINI deposited approximately $251,371 in cash into SABAINI Account 2. SABAINI deposited this cash through approximately 155 ATM deposit transactions and approximately 7 teller deposit transactions that occurred with regular frequency between approximately April, 2014 and November, 2018. Each of the approximately 162 deposit transactions was less than $10,000.

f.      Title 31, United States Code, Section 5313(a) and Title 31, Code of Federal Regulations, Section 1030.311, required domestic financial institutions to prepare and file with the Financial Crimes Enforcement Network (FinCEN) of the United States Treasury a Currency Transaction Report for any transaction involving currency of more than $10,000.

g.      Fifth Third Bank was a domestic financial institution subject to the Currency Transaction Reporting requirements described in the preceding sub-paragraph.

2

2.     Beginning in or around April, 2014 and continuing until in or around November, 2018, at Naperville, in the Northern District of Illinois, Eastern Division,

ANTHONY SABAINI,

defendant herein, did knowingly and for the purpose of evading the reporting requirements of Title 31, United State Code, Section 5313(a) and regulations prescribed thereunder, structure and attempt to structure transactions at Fifth Third Bank by depositing United States currency in amounts under $10,000, including the deposits listed on the dates below:

| Date | Number of Deposit Transactions | Total Deposited |
|---|---|---|
| April 18, 2014 | 1 | $8,501 |
| April 29, 2014 | 2 | $1,220 |
| July 17, 2014 | 3 | $2,000 |
| July 26, 2014 | 13 | $7,880 |
| September 19, 2014 | 1 | $3,500 |
| October 31, 2014 | 1 | $5,000 |
| December 3, 2014 | 1 | $3,000 |
| February 10, 2015 | 6 | $4,960 |
| February 13, 2015 | 1 | $2,100 |
| March 5, 2015 | 2 | $6,400 |
| March 12, 2015 | 1 | $3,100 |
| April 1, 2015 | 2 | $5,900 |
| April 26, 2015 | 2 | $7,100 |
| May 27, 2015 | 1 | $2,900 |
| June 23, 2015 | 2 | $7,000 |
| July 16, 2015 | 2 | $2,580 |
| August 29, 2015 | 2 | $8,000 |
| November 24, 2015 | 1 | $2,500 |
| December 7, 2015 | 1 | $5,000 |
| December 31, 2015 | 2 | $2,260 |
| January 28, 2016 | 2 | $6,000 |
| February 8, 2016 | 1 | $1,140 |

| Date | Number of Deposit Transactions | Total Deposited |
|---|---|---|
| February 17, 2016 | 1 | $5,000 |
| March 10, 2016 | 3 | $2,920 |
| March 20, 2016 | 1 | $3,000 |
| April 2, 2016 | 1 | $1,200 |
| April 8, 2016 | 1 | $4,500 |
| April 22, 2016 | 1 | $2,420 |
| April 25, 2016 | 2 | $8,400 |
| June 6, 2016 | 1 | $2,000 |
| June 16, 2016 | 2 | $1,480 |
| June 22, 2016 | 1 | $4,000 |
| July 13, 2016 | 4 | $4,000 |
| August 5, 2016 | 2 | $3,950 |
| August 23, 2016 | 6 | $5,000 |
| September 28, 2016 | 1 | $2,500 |
| October 20, 2016 | 1 | $2,000 |
| October 27, 2016 | 1 | $2,800 |
| November 8, 2016 | 2 | $1,910 |
| November 26, 2016 | 2 | $4,100 |
| January 25, 2017 | 2 | $6,000 |
| February 11, 2017 | 2 | $4,000 |
| March 8, 2017 | 2 | $7,400 |
| April 3, 2017 | 2 | $1,520 |
| April 14, 2017 | 2 | $1,900 |
| May 1, 2017 | 1 | $3,500 |
| June 1, 2017 | 2 | $6,000 |
| June 6, 2017 | 2 | $1,980 |
| June 13, 2017 | 1 | $2,150 |
| July 6, 2017 | 2 | $1,680 |
| July 21, 2017 | 2 | $1,500 |
| July 27, 2017 | 4 | $3,520 |
| August 14, 2017 | 3 | $6,970 |
| August 21, 2017 | 3 | $2,100 |
| September 5, 2017 | 1 | $2,300 |
| September 27, 2017 | 1 | $3,000 |
| November 13, 2017 | 5 | $4,760 |
| December 8, 2017 | 5 | $4,440 |
| December 21, 2017 | 2 | $2,500 |

| Date | Number of Deposit Transactions | Total Deposited |
|---|---|---|
| February 7, 2018 | 4 | $4,230 |
| June 21, 2018 | 3 | $3,500 |
| August 7, 2018 | 4 | $3,000 |
| September 19, 2018 | 1 | $2,300 |
| October 15, 2018 | 7 | $3,500 |
| November 2, 2018 | 5 | $2,920 |
| November 19, 2018 | 11 | $5,480 |

In violation of Tittle 31, United States Code, Section 5324(a)(3).

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 21, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ANTHONY SABAINI,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return SABAINI did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that the total income was $113,034, when SABAINI knew that the total income exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THREE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 1, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ANTHONY SABAINI,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Returns (Form 1040 with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return SABAINI did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that the total income was $118,080, when SABAINI knew that the total income exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

7

## COUNT FOUR

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 15, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ANTHONY SABAINI,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Returns (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return SABAINI did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that the total income was $123,817, when SABAINI knew that the total income exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

8

## COUNT FIVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 8, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ANTHONY SABAINI,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Returns (Form 1040 with schedules and attachments), for the calendar year 2017, which return was verified by written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return SABAINI did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that the total income was $125,547, when SABAINI knew that the total income exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

9

## COUNT SIX

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 15, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ANTHONY SABAINI,

defendant herein, willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Returns (Form 1040 with schedules and attachments), for the calendar year 2018, which return was verified by written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service, which return SABAINI did not believe to be true and correct as to every material matter, in that said return reported on Line 6 that the total income was $138,625, when SABAINI knew that the total income exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

10

## COUNT SEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.    Paragraphs 1a and 1b of Count One are incorporated here.

2.    At times material to Count Seven of this indictment:

a.    The HSI Special Agent Manual contained the HSI Informants Handbook. The Informants Handbook established policies and procedures governing the use of confidential sources by HSI special agents. SABAINI took and passed a training course on the Informants Handbook in or around 2014.

b.    As part of his duties as an HSI special agent, SABAINI handled and served as the control agent for Source A, an HSI confidential source, from in or around 2015 until in or around October 2018. When Source A began working for SABAINI as a confidential source in or around 2015, Source A had previously served approximately 10 years in prison for a federal narcotics conviction and was on supervised release.

**Source A's Encounter with the Drug Enforcement Administration**

c.    On or about January 13, 2017, law enforcement officers with the Drug Enforcement Administration ("DEA") were conducting an investigation of an individual DEA later identified as Source A. On or about that day, DEA Officer A directed a DEA confidential source to conduct a video-recorded controlled cocaine purchase from an individual the DEA source had identified as a possible cocaine supplier. During the controlled purchase, that individual sold the DEA source approximately two ounces of cocaine for approximately $2,400.

     d.     Shortly after the controlled cocaine purchase, DEA Officer A identified Source A as the individual who sold cocaine to the DEA source. In or around late January 2017, DEA Officer A ran Source A's name in a law enforcement database. As a result, SABAINI was notified that DEA Officer A had entered Source A's name in the database. Shortly thereafter, SABAINI called DEA Officer A and then met DEA Officer A in person. During these conversations, DEA Officer A informed SABAINI that Source A sold cocaine to a DEA source on or about January 13, 2017. SABAINI informed DEA Officer A that Source A worked for SABAINI as an informant, that Source A was not working any HSI investigations or operations on or about January 13, 2017, and that Source A was currently working on a significant investigation for HSI. Based in part on SABAINI's representations, DEA Officer A did not pursue charges against Source A at that time in connection with Source A's distribution of cocaine to a DEA source on or about January 13, 2017.

### SABAINI's Initial Request for Authorization to Use Source A

     e.     Before in or around August 2017, Source A worked for SABAINI as a non-documented confidential source. According to the Informants Handbook, in order to pay an HSI confidential source more than $2,500 for information in a fiscal year, the source had to be documented with HSI. The Informants Handbook required approval from a supervisory HSI official, known as the Special Agent in Charge, in order to document a source with a criminal history. The Informants Handbook also required that the control agent and his/her supervisor conduct an initial suitability

12

evaluation of the source in order to document an HSI confidential source, as well as annual suitability evaluations to maintain a documented HSI confidential source. The Informants Handbook required that the suitability evaluation address the following factors, among others: the source's criminal history, including any criminal activity that did not result in charges, and whether the source was a target of a pending investigation. The Informants Handbook required that the results of the suitability evaluation be documented in a memorandum that was reviewed and signed by another supervisory HSI official, known as the Assistant Special Agent in Charge, before being placed in the source's file.

f.      In or around August 2017, SABAINI requested HSI authorization to pay Source A $50,000 in exchange for information provided by Source A. In or around late August 2017, SABAINI was notified that HSI could not approve his request to pay Source A $50,000 unless Source A was documented with HSI as a confidential source. SABAINI was also notified that, as stated in the Informants Handbook, SABAINI needed to obtain approval from the Special Agent in Charge to sign up and use Source A as a source because Source A had a criminal history.

g.      On or about August 7, 2017, in connection with his request to the Special Agent in Charge to use Source A, SABAINI completed and signed a memorandum regarding Source A with the subject line "Confidential Informant Suitability Evaluation Report." The stated purpose of the memorandum was to ensure compliance with the Informant Handbook regarding the evaluation of Source

13

A's suitability to be a documented HSI confidential source. The suitability evaluation memorandum was submitted to and reviewed by the Assistant Special Agent in Charge. The memorandum asked if Source A had a criminal history, including any "criminal activity that did not result in charges." The memorandum also asked whether Source A was the target of a pending criminal investigation. In his written response, SABAINI wrote that Source A "is not currently facing charges and is not the target of any investigations." The memorandum did not disclose Source A's unauthorized sale of cocaine to the DEA source on or about January 13, 2017.

        h.     On or about May 3, 2017, Source A signed an HSI document entitled "Instructions to Confidential Informant," which stated the instructions therein must be read to the informant as witnessed by the control agent and another law enforcement officer. The instructions, each of which Source A initialed, stated, among other things:

> You are not permitted to violate any laws without the prior authorization of your control agent. Any authorized illegal activity will be conducted under the stringent control of HSI and requires direct contact with HSI control agent(s) prior to and after the conclusion of the authorized illegal activity.
>
> You are not permitted to possess contraband and/or evidence without the prior knowledge and consent of your control agent.

SABAINI signed the instructions under Source A's signature.

        i.     On or about August 14, 2017, SABAINI signed and sent a memorandum to the Special Agent in Charge requesting authorization to use Source

14

A. The request-to-use memorandum asked for any "criminal history/unauthorized illegal activity." In his written response, SABAINI did not disclose Source A's sale of cocaine to the DEA source on or about January 13, 2017. Attached to the memorandum was a checklist and questionnaire. The questionnaire asked whether Source A had a "history of non-compliance with CI requirements" or whether SABAINI was aware of "any other significant information" about Source A. SABAINI answered both questions, "N/A."

j. On or about September 18, 2017, based on the information provided in SABAINI's August 14, 2017 request-to-use memorandum, the Special Agent in Charge approved SABAINI's request to use Source A for a period of 90 days.

**FBI's Designation of Source A as the Target of a Drug Investigation**

k. In or around October 2017, SABAINI was notified that Source A was a target in a separate Federal Bureau of Investigation ("FBI") narcotics and gang investigation. On or about October 11, 2017, SABAINI was notified that FBI was conducting an investigation into the "[Source A] DTO [drug trafficking organization]." On or about October 23, 2017, SABAINI received a summary of the FBI's investigation that listed Source A as a "principal target" of the investigation. The summary described drug-related activities by Source A, including Source A's sale of cocaine to a DEA confidential source on or about January 13, 2017.

**SABAINI's Request for Authorization to Continue Using Source A**

l.    In or around January 2018, SABAINI signed and sent a memorandum to the Special Agent in Charge again requesting authorization to use Source A, whose initial authorization had expired in or around December 2017. The request-to-use memorandum asked for any "criminal history/unauthorized illegal activity." In his written response, SABAINI did not disclose the pending FBI investigation targeting Source A or Source A's sale of cocaine to the DEA source on or about January 13, 2017. Attached to the memorandum was a checklist and questionnaire. The questionnaire asked whether Source A had a "history of non-compliance with CI requirements" or whether SABAINI was aware of "any other significant information" about Source A. SABAINI answered both questions, "N/A."

m.    Based on the information provided in SABAINI's request-to-use memorandum, on or about February 7, 2018, the Special Agent in Charge approved SABAINI's request to use Source A for a period of 120 days.

n.    On or about February 6, 2018, SABAINI requested approval from the Special Agent in Charge to pay Source A $45,000 for information and services provided. The Special Agent in Charge approved the request, and HSI paid Source A approximately $45,000 on or about March 9, 2018.

o.    In or around February 2018, SABAINI conducted another suitability evaluation of Source A that he documented in a March 19, 2018 memorandum that he authored and signed entitled "Confidential Informant

16

Suitability Evaluation Report." The memorandum was submitted to Source A's file and reviewed by an Assistant Special Agent in Charge. The memorandum asked if Source A had a criminal history, including any "criminal activity that did not result in charges." The memorandum also asked whether Source A was the target of a pending criminal investigation. In his written response, SABAINI wrote that Source A "is not currently facing charges and is not the target of any investigations." The memorandum did not disclose Source A's unauthorized sale of cocaine to the DEA source on or about January 13, 2017. The memorandum did not disclose the FBI drug investigation in which Source A was listed as a target.

       p.    On or about March 19, 2018, an Assistant Special Agent in Charge conducted a semi-annual management review of Source A's file, including SABAINI's suitability evaluation memorandum dated March 19, 2018. As a result of this review, the Assistant Special Agent in Charge recommended keeping Source A active as a documented source.

       q.    The following matters, among others, were material to the authorization by HSI supervisors to use and maintain Source A as a documented confidential source:

       i.    The suitability evaluations of Source A;

       ii.    Whether Source A had engaged in any uncharged or unauthorized criminal conduct;

17

        iii.        Whether Source A was the target of any pending criminal investigations; and

        iv.        Whether Source A complied with the instructions issued to informants by HSI.

3.     Beginning in or around August 2017 and continuing until in or around March 2018, at Oakbrook Terrace, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANTHONY SABAINI,

defendant herein, did knowingly and willfully falsify, conceal, and cover up, by a trick, scheme, and device, a material fact in a matter within the jurisdiction of the DHS, an agency within the executive branch of the government of the United States.

4.     It was part of the scheme that SABAINI, in or around August 2017, in order to secure initial authorization from his HSI supervisors to use Source A and pay Source A approximately $50,000, sent a memorandum to the Special Agent in Charge in which SABAINI concealed:

        a.        Source A's uncharged and unauthorized criminal conduct in January 2017, namely, Source A's sale of cocaine on or about January 13, 2017;

        b.        the related DEA drug investigation involving Source A; and

        c.        Source A's history of non-compliance with HSI informant requirements.

18

5. It was further part of the scheme that, in or around August 2017, in order to secure initial authorization from his supervisors to use Source A and pay Source A approximately $50,000, SABAINI prepared and submitted a suitability evaluation memorandum in which SABAINI falsely stated that Source A was not the target of any investigations and concealed Source A's uncharged and unauthorized criminal conduct in January 2017, namely, Source A's sale of cocaine on or about January 13, 2017.

6. It was further part of the scheme that SABAINI, in or around late January 2018, in order to secure continued authorization from his supervisors to use Source A and pay Source A approximately $45,000, sent a memorandum to the Special Agent in Charge in which SABAINI concealed:

a. Source A's uncharged and unauthorized criminal conduct in January 2017, namely, Source A's sale of cocaine on or about January 13, 2017;

b. the related DEA drug investigation involving Source A;

c. the FBI drug investigation in which Source A was listed as a target in or around October 2018; and

d. Source A's history of non-compliance with HSI informant requirements.

7. It was further part of the scheme that, in or around February 2018 and March 2018, in order to secure continued authorization from his supervisors to use Source A and pay Source A approximately $45,000, SABAINI prepared and

submitted a suitability evaluation memorandum in which SABAINI falsely stated that Source A was not the target of any investigations and concealed Source A's uncharged and unauthorized criminal conduct in January 2017 namely, Source A's sale of cocaine on or about January 13, 2017.

In violation of Title 18, United States Code, Section 1001(a)(1).

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Amarjeet S. Bhachu
on behalf of the
UNITED STATES ATTORNEY

20